(104 So. 623)

No. 26525.

**LOUISIANA IRRIGATION & MILL CO. v. SIXTH WARD DRAINAGE DIST. et al.**

(March 30, 1925. Rehearing Denied May 25, 1925.)

*(Syllabus by Editorial Staff.)*

1. **Highways** ⇐120(2)—**Owner of lower adjoining estate may not interfere with natural drainage of upper, though it be public road.**

Though the slope of land is slight, the owner of the lower of two adjoining estates may erect no barrier interfering with the natural drainage of the upper, notwithstanding the latter is a public road.

2. **Highways** ⇐120(1)—**Plenary powers of administration in police juries include drainage.**

Under Rev. St. §§ 2750, 3364, police juries have plenary powers with respect to administration of public roads within their respective jurisdictions, including their natural drainage.

3. **Highways** ⇐120(2)—**Natural drainage, including that of road, need not be diverted for convenience of lower adjacent estate.**

The police jury has right to let drainage of a public road take its natural courses, and need not drain in some other way for convenience of owner of adjacent estate; its rights and obligations in respect to drainage of road being the same as that of any other owner of an estate.

4. **Waters and water courses** ⇐119(5)—**Cost of siphons under irrigation ditch interfering with natural drainage to be borne by owner of lower estate.**

Where the lower of two adjoining estates constructs an irrigation ditch on his land interfering with natural drainage of the upper estate, the cost of siphons or conduits under the ditch to allow the drainage to pursue its natural course must be borne by the owner of the lower estate.

Appeal from Eighteenth Judicial District Court, Parish of Acadia; Wm. Campbell Judge.

Suit by the Louisiana Irrigation & Mill Company against the Sixth Ward Drainage District and others. From a judgment dismissing an injunction, plaintiff appeals. Affirmed.

P. S. Pugh and Smith & Carmouche, all of Crowley, for appellant.

Percy T. Ogden, Dist. Atty., of Crowley, for appellee Sixth Ward Drainage Dist.

Howard E. Bruner, of Crowley, for appellee Medlenka.

ST. PAUL, J. An irrigation canal is the very opposite of drainage canal. The latter is built *below* the surface of the soil, by excavating, and is intended to receive and carry off the surplus waters from the adjacent lands. The former is built *above* the surface of the soil, by erecting twin (parallel) levees

or embankments, and is intended (reservoir-like) to supply a deficiency in the water needed for the cultivation of the adjacent lands.

Plaintiff owns and operates, in the parish of Acadia, an irrigating canal which, at a certain point, runs due north and south. Alongside of said canal, and west thereof, runs a state highway, next to which, and also to the west thereof, there is a slight depression (in extent some 30 acres), shaped like a half-bowl, or half-saucer; the ridges to the north, to the west, and to the south thereof, forming (as it were) the rim of the bowl or saucer, and the highway and canal to the east thereof giving it the shape of a half-moon. The center of the bowl or saucer lies midway between the north and south ridges, on the chord formed by the highway and canal, and subtending the arc or semi-circle formed by the ridges aforesaid. From this point a small drainage canal or ditch has been dug to carry off the waters to the swamps and streams which lie to the east.

## I.

The evidence is *conclusive* that the natural slope of the land is towards this point, and that the waters from this depression gather at the point and would fall into and be carried off by the ditch aforesaid but for the embankment of the irrigation canal, which arrests the flow of the water and gathers it along and upon the highway aforesaid. This is shown by the physical evidence (contour maps and photographs of the flooded highway), and by the testimony of every witness for both plaintiff and defendant, *except* plaintiff's manager, who admits, however, that he is not familiar with the spot.

## II.

After long and vain endeavors to get plaintiff to open up or install a siphon or conduit under its embankments or levees, so as to allow the flood waters to escape beneath the canal and flow into the ditch aforesaid, the defendant drainage district and one J. G. Medlenka, president of and acting for the police jury of Acadia parish, *cut* the twin levees of plaintiff's canal. And plaintiff thereupon sued out an injunction to prevent their interfering with plaintiff's rebuilding said levees.

## III.

[1] A great deal of the argument, both oral and printed, was devoted to the question whether there was here a "natural drain," which defendants were authorized to keep open, or merely the opening up of an artificial drain which must be built at defendants' expense and the site thereof expropriated if necessary. But in our opinion all that has nothing whatever to do with the case before us.

That the land drains naturally towards the point of which we have spoken, is shown conclusively, as we have said. But the slope of the land is very gentle, and therefore the flow of the water is slow and widespread, thus causing no erosion and cutting no defined channel. Hence we are not dealing with a drain at all, whether natural or artificial, but with drainage—natural drainage; and with the right vel non of one possessor of an estate to interfere with the natural drainage of another estate.

The precise point here involved arose in Broussard v. Cormier, 154 La. 877, 98 So. 403, and this court held (see syllabus No. 4):

"Where two adjoining estates have practically the same elevation, but there is a difference of a few inches whereby the natural drainage of water is over the lower estate, the proprietor of such lower estate has no right to erect levees diverting the flow of water, and mandatory injunction lies to compel him to *remove such obstructions*." (Italics ours.)

And a public road is an estate belonging to the public, as much as a plantation is an estate belonging to an individual, and re-

quires as much and even more efficient drainage than a plantation. Hence no adjacent landowner may interfere with the natural drainage of such road.

## IV.

[2] But whether or not the commissioners of a drainage district be vested with any special jurisdiction in connection with the natural drainage of public places within the limits of such district is of no particular interest in this case; for the evidence shows that Medlenka, the president of the police jury, was acting for that body, and police juries throughout the state are vested with plenary powers with respect to the establishment and administration of the public roads within their respective jurisdictions. Rev. Stat. 1870, §§ 2750, 3364; Plank Road Co. v. Kline, 106 La. 325, 30 So. 854. And the drainage commissioners herein are merely co-operating with the president of the police jury aforesaid.

## V.

[3] We likewise think it would be fruitless to inquire whether or not the highway might or might not be quite as efficiently drained by opening up or cutting ditches through the ridges to the north, to the south, and to the west. Suffice it to say the police jury has the right to let the drainage take its natural course, and is not obliged to drain in some other way for the convenience of the owner of some adjacent estate. Its rights and obligations in respect to the drainage of the public roads is precisely the same as that of any other owner of an estate. And those have thus been stated (in part) in Broussard v. Cormier, supra, (see syllabus No. 3):

"A proprietor of an upper estate can do nothing whereby the natural servitude of drain due by the lower estate may be rendered more burdensome, except that he may make all drainage works necessary to the proper cultivation [or other use] of his estate by cutting ditches, concentrating the flow of water, and increasing

158 LA.—23

it beyond the slow process by which it would ultimately reach the same destination, although *he cannot divert such water from the natural flow.*" (Italics ours.)

## VI.

[4] We assume that after this, and within a reasonable time, plaintiff will provide the necessary siphons or conduits under its embankments or levees to allow the flood water to escape beneath its canal and continue its flow along its natural course; and that the defendants will be satisfied with this done. But, should defendants attempt to act unreasonably or arbitrarily in the matter, the courts will, of course, be open to plaintiff. We take it, however, that this is in the nature of a test case to determine the rights of the parties in the premises, with respect to who shall bear the costs of installing such siphons and conduits; and, that being settled, we anticipate no further litigation between them. From what we have said it is clear that such cost must be borne by plaintiff.

### Decree.

The judgment appealed from, dissolving the injunction, is therefore affirmed.